GUIDRY, J.
*233 Plaintiff, Fred Russell, appeals from a judgment of the trial court granting summary judgment in favor of defendant, City of Baton Rouge, Parish of East Baton Rouge (City/Parish), and dismissing his claims against the City/Parish with prejudice. For the reasons that follow, we reverse.
FACTS AND PROCEDURAL HISTORY
On December 9, 2014, Russell, who was seventy eight years old, was a pedestrian on a crowded walkway between St. Louis Street and the Nineteenth Judicial District Court (19th JDC) building. While traversing the area, Russell tripped on an elevated section of concrete, causing him to fall onto the pavement and sustain injuries. Russell subsequently filed a petition for damages, naming the City/Parish as defendant and asserting that the cause of his fall was a transitional section of the sidewalk that abruptly changed elevation and created an unreasonably dangerous condition.
Thereafter, the City/Parish filed a motion for summary judgment, asserting that the condition of the sidewalk was open and obvious, and therefore, not unreasonably dangerous, and that Russell simply failed to watch where he was walking. As such, the City/Parish asserted that it did not owe a duty to protect Russell against an open and obvious condition. Following a hearing on the City/Parish's motion, the trial court signed a judgment granting the motion and dismissing Russell's suit with prejudice. Russell now appeals from the trial court's judgment.
DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. M/V Resources LLC v. Louisiana Hardwood Products LLC, 16-0758, p. 8 (La. App. 1st Cir. 7/26/17), 225 So.3d 1104, 1109, writ denied, 17-1748 (La. 12/5/17), 231 So.3d 624. A motion for summary judgment is properly granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. Willis v. Medders. 00-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050 (per curiam).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. M/V Resources LLC, 16-0758 at p. 9, 225 So.3d at 1109. A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966(F).
On a motion for summary judgment, the burden of proof is on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support *234 for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to determine the truth of the matter but instead to determine whether there is a genuine issue of triable fact. Clark v. J-H-J Inc., 13-0432, pp. 3-4 (La. App. 1st Cir. 11/1/13), 136 So.3d 815, 817, writ denied, 13-2780 (La. 2/14/14), 132 So.3d 964. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Nash v. Rouse's Enterprises, LLC, 15-1101, p. 3 (La. App. 1st Cir. 2/26/16), 191 So.3d 599, 600-601.
In order to prove a public entity is liable for damages caused by a defect in a sidewalk, the plaintiff must establish: (1) custody or ownership of the sidewalk by the public entity; (2) the defect created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation. Temple v. Morgan, 15-1159, p. 9 (La. App. 1st Cir. 6/3/16), 196 So.3d 71, 76, writ denied, 16-1255 (La. 10/28/16), 208 So.3d 889.
There is no fixed rule for determining whether a defect in a sidewalk is unreasonably dangerous. Instead, a risk-utility balancing test is used to determine whether the defect creates an unreasonable risk of harm. Temple, 15-1159 at p. 10, 196 So.3d at 77. This test considers: (1) the utility of the complained of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature. Broussard v. State ex rel. Office of State Buildings, 12-1238, p. 10 (La. 4/5/13), 113 So.3d 175, 184.
The second prong of this inquiry focuses on whether the dangerous or defective condition is obvious and apparent. Broussard, 12-1238 at p. 10, 113 So.3d at 184. Under Louisiana law, a defendant generally does not have a duty to protect against that which is obvious and apparent. Broussard, 12-1238 at p. 10, 113 So.3d at 184. A defect is obvious and apparent when it is one that should be open and obvious to everyone who may potentially encounter it. Broussard, 12-1238 at p. 10, 113 So.3d at 184. The open and obvious inquiry thus focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially ascertainable knowledge. Temple, 15-1159 at p. 10, 196 So.3d at 77.
In the instant case, the City/Parish sought summary judgment, asserting that Russell was unable to establish that the condition of the sidewalk outside the 19th JDC created an unreasonable risk of harm because any alleged defect was open and obvious, and Russell simply failed to watch where he was walking. In support of its motion, the City/Parish submitted the deposition testimony of Russell, wherein he stated that he had been to the 19th JDC once before and that on the date of the accident, he was looking at the crowd on the sidewalk as he was walking. Additionally, the City/Parish submitted the deposition testimony of Michael Whatley, building manager for the 19th JDC, who stated that there had not been any falls at this location before Russell's fall, and that he *235 did not know there was an issue with the sidewalk prior to the fall.
In opposition to the City/Parish's motion, Russell submitted the affidavit of Candace Norton, the individual who Russell was accompanying to the 19th JDC on the date of the accident. Norton stated that Russell tripped on the edge of the pavement identified in the picture attached to her affidavit, which showed the edge of the sidewalk and a broken, yellow curb as it appeared on the date of the accident. Norton stated that prior to Russell's fall, the sidewalk was crowded with pedestrians, and she and Russell moved closer to the building to get around a group of people and did not notice the broken curb or edge of the sidewalk.
Additionally, Russell submitted his own deposition testimony, wherein he stated that while walking down the sidewalk, he was met by an onrush of people on the comer. Russell stated that there were so many people that some were walking in the street, but he chose to walk closer toward the building because it was closer to the doors he would be entering. Russell stated that people were walking in front of him, and he did not look down at the ground because he was navigating the crowd. Finally, Russell stated that at the location where he fell, there was no curbing because the yellow curb was broken.
Russell also submitted the deposition testimony of Whatley, who stated that he was walking behind Russell when he fell. Whatley identified the area where Russell fell as the same area identified by Norton and Russell, but he stated that he did not see what caused Russell to fall. However, Whatley acknowledged that a four or five inch concrete section of the curb had broken off sometime prior to Russell's fall, and that he had removed the piece of the concrete curb when he discovered it but did not take any action to repair it until after Russell's fall.
Finally, Russell submitted the deposition testimony of Michael Stein, a professional engineer. Stein stated that the area where Russell fell contained a transition from the driveway to the sidewalk adjacent to the 19th JDC building. According to Stein, this transition was a trip hazard and violated the City/Parish Building Code. Particularly, Stein stated that the Code of Ordinances for the City/Parish Sections 2:170 and 2:171 require the removal and repair of all uneven and broken sections of sidewalks. Furthermore, Stein stated that the City/Parish did not comply with the Unified Development Code requiring slopes rather than abrupt drop offs in transition areas such as the one at issue.
From our de novo review of the evidence in the record, we find that a genuine issue of material fact exists as to whether the condition of the sidewalk was open and obvious and whether it presented an unreasonable risk of harm. The evidence submitted established that Russell, a seventy-eight year old man, had been to the 19th JDC on only one prior occasion, though it is not clear that he traversed this same area on his prior visit.[1] However, Russell and Norton stated that on the date of Russell's fall, the sidewalk was crowded with people, people were walking in front of them, and they did not notice the broken curb or edge of the sidewalk. Thus, the evidence presented creates a genuine issue of material fact as to whether Russell's view of the area was unobstructed and as such, whether the alleged defect was open and obvious. See *236 Bastian v. Rosenthal, 17-0284, p. 9 (La. App. 4th Cir. 12/20/17), 234 So.3d 1022, 1027 (finding as a matter of law that in order for a condition to be open and obvious, it must be visible). Furthermore, Stein's testimony regarding the hazard presented by the area at issue and the violations of building and development codes further presents a genuine issue as to whether the area where Russell fell was unreasonably dangerous.
Accordingly, these genuine issues of material fact preclude the granting of summary judgment in favor of the City/Parish, and as such, the trial court erred in granting the City/Parish's motion and dismissing Russell's claim with prejudice.
CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court and remand this matter for further proceedings. All costs of this appeal, in the amount of $1,441.00, are assessed to the City of Baton Rouge, Parish of East Baton Rouge.
REVERSED AND REMANDED.
Theriot, J. concurs

We note that the record does not contain any evidence that Russell traversed this same area on his previous visit to the 19th JDC.